## 23046. HELTON v. HELTON.

DECIDED NOVEMBER 18, 1933.

*G. A. Johns,* for plaintiff. *Clifford Pratt,* for defendant.

BROYLES, C. J. R. B. Helton, transferee of a promissory note, brought suit thereon against W. H. Helton. W. H. Helton defended on the ground that at the time the note was made he was mentally incapable of making a binding contract. No appearance was made by any person claiming to be the guardian of the defendant W. H. Helton. Verdict and judgment were rendered in favor of the plaintiff on October 20, 1932. On November 14, 1932, W. H. Helton, through his alleged duly named and appointed guardian, Miss Mattie Helton, filed a motion to set aside the judgment, alleging in part "that the said Miss Mattie Helton became the guardian of the said W. H. Helton and of his property on the 26th day of February, 1918, or more than a year prior to the execution of the note sued upon, and that the note was executed by W. H. Helton and not by his guardian, and that said W. H. Helton was at that time legally incapable of executing a binding contract because of his mental incapacity," and "that he was legally inhibited from entering into a contract after the said Miss Mattie Helton was appointed as his guardian and until such time as the guardianship might be terminated in the manner provided by law," and that the note and the judgment thereon were void because of W. H. Helton's mental incapacity to contract at the time of its execution, and be-

cause W. H. Helton was under guardianship as an insane person at the time of the execution of the note. R. B. Helton, respondent in the motion to set aside, denied that Miss Mattie Helton had ever been legally appointed the guardian of W. H. Helton. The motion to set aside the judgment was overruled, and the movant excepted.

The record discloses that the note sued on was given for money borrowed by W. H. Helton to pay a fine imposed upon him in the superior court of Barrow county. On the hearing of the motion to set aside the judgment the clerk of the superior court testified: "I wrote out this original note, and W. H. Helton signed the same in my presence, for the money to pay said fine and cost in the said case, which his brother A. C. Helton lent to W. H. Helton for that purpose. There was no question made by said W. H. Helton at the time, or by anyone for him, that he had a guardian, or that he had anything wrong with his mind. In so far as I could observe and tell he had ample mental capacity, and knew fully and understood thoroughly what he was doing, and appeared to be mighty glad to have the fine paid so as to prevent his going to the chain-gang for twelve months." The movant introduced in evidence the entire record of the lunacy proceeding before the ordinary. That record showed that the ten days notice required (by section 3092 of the Civil Code of 1910) to be given to the three nearest adult relatives of the alleged lunatic was not given, but that it had been waived in writing by such relatives. Such a waiver is permissible under the act of 1915 (Ga. L. 1915, p. 20), which amends code section 3092. That act, however, also *requires* that where such a waiver has been made, there shall be submitted an affidavit by one of such relatives, or by some other person, that the alleged lunatic "is violently insane and is likely to do himself bodily injury;" and the act further provides that "the truth of such affidavit" must be "verified in writing by a practicing physician appointed by the ordinary to examine" the alleged lunatic. In this case it appears on the face of the lunacy proceedings that the required affidavit was not made, and, of course (the affidavit not having been made), the truth of the affidavit was not verified as required by the act. It follows that the ordinary was not authorized in this case to issue a commission of lunacy, and that the appointment of the guardian for the alleged lunatic was void. And, the invalidity of such appointment appearing on the face of the record, the judgment of appointment could

be collaterally attacked. *Payne* v. *Shirley,* 25 . *Ga. App.* 644 (3) (104 S. E. 17), and cit.

In view of the foregoing rulings the court did not err in refusing to set aside the judgment.

*Judgment affirmed. MacIntyre, J., concurs.*

GUERRY, J., dissenting. R. B. Helton filed suit to the April term, 1932, of the superior court of Barrow county, against W. H. Helton. The note on which the suit was based was dated March 19, 1919. W. H. Helton filed his plea alleging that he was not, at the time of the signing of said note, "in a mental condition to make a contract and did not know what he was doing." The trial resulted in a verdict for the plaintiff at the October term, 1932, of said court. Miss Mattie Helton, alleging that she was the guardian for W. H. Helton, brought a petition to the superior court of Barrow county, asking that the judgment against W. H. Helton be declared null and void and be set aside, for the reason that W. H. Helton was adjudged a lunatic and committed to the State Sanitarium in 1916, and that in 1918 she was appointed as guardian of the estate of W. H. Helton, and such guardianship had never been terminated, and that the plaintiff in the case was familiar with these facts. The record shows that W. H. Helton shot at his wife on March 4, 1916. It shows that on March 6, 1916, W. M. Maxey made affidavit in the court of ordinary that W. H. Helton was a lunatic and subject to be committed to the Georgia State Sanitarium, and prayed that a commission issue to investigate the same. Three relatives of W. H. Helton acknowledged service on the same day. The commission was appointed on the same day. A hearing was had on the same day and W. H. Helton was adjudged to be a lunatic and a fit subject for the State Sanitarium on that day. All of these acts took place March 6, 1916. On January 7, 1918, Mattie Helton filed a petition to the court of ordinary of Barrow county, alleging that Henry Helton (W. H. Helton) has been adjudged a lunatic and is confined in the asylum at Milledgeville, and prayed that she be named as his guardian to take charge of certain property inherited by Henry Helton. At the February term of the court of ordinary, 1918, of Barrow county, Miss Mattie Helton was named as guardian, it appearing that citation had been duly published and letters of guardianship were issued to her. The letters stated that Henry Helton has been adjudged a lunatic and is now

confined in the State Sanitarium at Milledgeville. It further appears from the record (it being silent as to the date of his release from Milledgeville) that Henry Helton was tried at the December term, 1918, under an indictment returned at the March term, 1916, of Barrow superior court, charging him with assault with intent to murder, and at said December term was convicted of shooting at another. It appears further that the consideration of said note was money loaned to W. H. Helton to pay the fine imposed on him as a result of the conviction.

One who has been legally adjudged a lunatic and for whom a legal guardianship exists can not make a binding contract even during lucid intervals; nor can he make such a contract after sanity is restored, until the guardianship is dissolved. Civil Code (1910), § 4237. The judgment attacked in this case is not the judgment committing W. H. Helton to the Sanitarium at Milledgeville, but is the judgment appointing Miss Mattie Helton as guardian for W. H. Helton, in February, 1918. If Miss Mattie Helton was the legally appointed and duly qualified guardian for W. H. Helton at the time of the signing of this note the judgment rendered against Helton thereon is a nullity. Did the court of ordinary, on the face of the record, have authority to appoint Mattie Helton as guardian? I think so. Every presumption is in favor of the judgment of a court of ordinary, and it is not subject to collateral attack except where the record discloses a want of jurisdictional facts. *Wash* v. *Dickson,* 147 *Ga.* 540 (94 S. E. 1009); *Riddle* v. *Shoup,* 147 *Ga.* 387 (94 S. E. 236); *Jones* v. *Smith,* 120 *Ga.* 642 (48 S. E. 134). It is to be presumed that every fact necessary to make it valid and binding was before the court. "If the record is incomplete or is merely silent concerning jurisdictional facts, the judgment, by reason of the presumption, will sustain itself against collateral attack by parties or privies, on account of an alleged want of jurisdiction. 1 Black on Judgments (2d ed.) 406, § 271." "A judgment rendered by a court of competent jurisdiction is not subject to collateral attack, where it is on its face apparently valid, and such defects as existed in the proceedings upon which the judgment was based could have been cured by amendment." *Hardy* v. *Luke,* 18 *Ga. App.* 423 (89 S. E. 540). See also *Freeman* v. *Bank,* 20 *Ga. App.* 334 (93 S. E. 34). A judgment may not be collaterally attacked by showing the facts and allegations of the petition on which

it is based were untrue, where no fraud is alleged or shown. I am therefore of the opinion that, although it may appear on its face that the record committing W. H. Helton to the Sanitarium was irregular, it does not appear on the face of the record of the judgment of the ordinary issuing letters of guardianship that he did not have jurisdiction to issue such letters, and such judgment directing that such letters be issued is regular on its face and can not be collaterally attacked, and I think for this reason the judgment should be reversed.